UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT LEXINGTON

| | |
|---|---|
| OKERA ULIMENGU, *aka Okera Ulimwengu*, | ) ) ) |
| Petitioner, | ) Civil No. 5: 21-215-WOB ) ) |
| V. | ) ) |
| WARDEN DAVID PAUL, | ) **MEMORANDUM OPINION** ) **AND ORDER** ) |
| Respondent. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Petitioner Okera Ulimengu[1] is a federal prisoner currently confined at the Federal Medical Center ("FMC")–Lexington in Lexington, Kentucky.  Proceeding without an attorney, Ulimengu has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging the calculation of his sentence by the Bureau of Prisons ("BOP"). [R. 1]  The Respondent Warden has filed his response to the petition [R. 16], to which Ulimengu has filed a reply. [R. 18]  Thus, this matter is ripe for review.

**I.**

On September 16, 1977, Ulimengu was arrested by law enforcement officials in Crown Point, Indiana, on charges of First Degree Murder and Murder in Perpetration of Rape.[2]  On February 4, 1981, he was sentenced to life imprisonment for his convictions on these charges.

---

[1] Petitioner has used two variations of his last name – "Ulimengu" and "Ulimwengu" – in his legal filings.  *See generally* R. 17 at p. 1-2.  However, as "Ulimengu" is the last name used in Petitioner's underlying criminal case, as well as his last name according to the records maintained by the Bureau of Prisons, the Court will refer to Petitioner as "Ulimengu."

[2] Ulimengu's criminal history is summarized by Respondent in his Response to Ulimengu's § 2241 petition.  [R. 16 at p. 1-3]  Unless otherwise indicated, Ulimengu does not dispute Respondent's summary of his relevant criminal history.

Ulimengu remained in the custody of Indiana officials until he was released on parole from the life sentence on May 28, 2003. He remained on parole until September 30, 2008, when he was taken into custody for a parole violation. On October 17, 2008, Ulimengu's parole was officially revoked and he returned to serve the balance of his Indiana sentence.

On August 14, 2008, Ulimengu was charged in an indictment issued by a federal grand jury in the United States District Court for the Eastern District of Texas with one count of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. *See United States v. Okera Ulimengu*, 4:08-cr-00177-ALM-CAN-8 (E.D. Texas 2008) at R. 52. Because Ulimengu was in state custody in Indiana, on January 16, 2009, he was transferred to federal officials pursuant a *writ of habeas corpus ad prosequendum* issued by the federal district court. [R. 16]

On October 8, 2009, a jury found Ulimengu guilty of his federal drug charges, *United States v. Okera Ulimengu*, 4:08-cr-00177-ALM-CAN-8 (E.D. Texas 2008) at R. 360, and on April 15, 2010, Ulimengu was sentenced to a term of imprisonment of 166 months, to run consecutively to Ulimengu's imprisonment in 3CR-131-077-677 in the Superior Court of Lake County, Gary, Indiana. *Id*. at R. 421. On November 12, 2015, the federal district court entered an Order reducing Ulimengu's sentence to a term of imprisonment of 121 months. *Id*. at 571.[3]

On October 24, 2019, Ulimengu was again paroled from his Indiana state sentence and transferred to federal custody to commence the service of his 121-month federal sentence. [R. 16 at p. 3; 16-1 at Att. E]

---

[3] On January 10, 2020, Ulimengu filed a motion for nunc pro tunc designation for his time spent in state custody, *id*. at R. 582, which was denied on January 22, 2020. *Id*. at R. 584. On January 6, 2021, Ulimengu filed a second motion for nunc pro tunc designation, *id*. at R. 586, which was denied on March 16, 2021. *Id*. at 587.

The sentence computation prepared by the BOP with respect to Ulimengu's 121-month federal sentence commences his sentence on October 24, 2019, the date that he came into exclusive federal custody. [R. 16 at p. 3; 16-1 at Att. A.] According to Respondent, it was determined that Ulimengu was not entitled to prior custody credits, as the time he spent in federal custody on the writ of habeas corpus *ad prosequendum* from January 16, 2009, through May 7, 2010, was credited against his state sentence. [R. 16 at p. 3; R. 16-1 at Att. A, B, F.] Respondent states that Ulimwengu has currently earned 108 days of good conduct time and is projected to earn a total of 544 days of good conduct time. [R. 16 at p. 3; R. 16-1 at Att. A] Based on this projection, Ulimwengu is currently scheduled to be released from federal custody on May 28, 2028. [*Id.*]

In his § 2241 petition, Ulimengu challenges the determination that he is not entitled to prior custody credits for the approximately 15-month period that he was in federal custody pursuant to the writ of habeas corpus *ad prosequendum*, which he identifies as having ended on May 10, 2010. [R. 1 at p. 5] The basis for his argument is not entirely clear, as he states only that "the time in custody must be allocated to his Federal Sentence; the State sentence does not earn credit time." [*Id.*] He then attaches (without further explanation) a copy of Ind. Code § 11-13-3-2, which is the Indiana statute regarding the eligibility for certain offenders for release on parole and discharge. *See* Ind. Code § 11-13-3-2. In his reply, Ulimengu argues that, under this statute, "a person's sentence to a term of life imprisonment does not earn jail time credit with respect to that term. Thusly, Petitioner has not received credit for the dates in question from the State of Indiana Department of Correction. January 2009 through May 2010." [R. 18]

However, after reviewing Ulimengu's § 2241 petition, Respondent's Response, and Ulimengu's reply, the Court concludes that Ulimengu's sentence has been correctly calculated, thus he is not entitled to habeas relief.

**II.**

Calculation of a federal prisoner's sentence, including both its commencement date and any credits for custody before the sentence is imposed, is determined 18 U.S.C. § 3585, which provides as follows:

> (a) A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –
>
> > (1) as a result of the offense for which the sentence was imposed; or
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585.

Pursuant to § 3585(a), Ulimengu's sentence calculation commenced his federal sentence on the date that he was receive in to exclusive federal custody (October 24, 2019). [R. 16 at p. 4, 16-1 at Att. A] Ulimengu does not appear to dispute this determination. Rather, Ulimengu challenges whether he is entitled to prior custody credit for his time spent in federal custody pursuant to the writ of habeas corpus *ad prosequendum*. Section 3585(b) establishes whether a defendant may obtain credit for time spent in custody before his sentence commences. And while Ulimengu seeks credit for his time spent in federal custody from roughly January 2009 through May 2010, he was given credit by the Indiana Department of Corrections for this time in custody towards his state sentence. [R. 16 at p. 3]

Ulimengu's argument that he was not actually given credit by the Indiana Department of Corrections for this time in custody is based on solely his citation to a single sentence contained within Ind. Code. § 11-13-3-2, the Indiana statute governing the eligibility for consideration for release on parole of a person sentenced upon conviction of a first or second to degree murder to a term of life imprisonment. [R. 18 at p. 2] According to Ulimengu, because Ind. Code § 11-13-3-2 (b)(3) states that a person serving a term of life imprisonment "does not earn credit time with respect to that term," he was given no credit towards his state sentence for his time in custody.[4]

---

[4] Section 11-13-3-2 states as follows:

**11-13-3-2 Release on parole and discharge; IC 35-50 offenders; eligibility for offenders under other laws; reinstatement after revocation of parole**

Sec. 2. (a) Release on parole and discharge of an offender sentenced for an offense under IC 35-50 shall be determined under IC 35-50-6.

(b) Parole and discharge eligibility for offenders sentenced for offenses under laws other than IC 35-50 is as follows:

(1) A person sentenced upon conviction of a felony to an indeterminate term of imprisonment is eligible for consideration for release on parole upon completion of his minimum term of imprisonment, less the credit time he has earned with respect to that term.

(2) A person sentenced upon conviction of a felony to a determinate term of imprisonment is eligible for consideration for release on parole upon completion of one-half ( ½ ) of his determinate term of imprisonment or at the expiration of twenty (20) years, whichever comes first, less the credit time he has earned with respect to that term.

(3) A person sentenced upon conviction of first degree murder or second degree murder to a term of life imprisonment is eligible for consideration for release on parole upon completion of twenty (20) years of time served on the sentence. A person sentenced upon conviction of a felony other than first degree murder or second degree murder to a term of life imprisonment is eligible for consideration for release on parole upon completion of fifteen (15) years of time served on the sentence. A person sentenced upon conviction of more than one (1) felony to more than one (1) term of life imprisonment is not eligible for consideration for release on parole under this section. **A person sentenced to a term of life imprisonment does not earn credit time with respect to that term.**

Presumably, Ulimengu's argument is that, because he was originally sentenced to a term of life imprisonment, he is precluded from ever earning any credit towards his state sentence for any time spent in state custody by Ind. Code. § 11-13-3-2(b)(3).

First, aside from simply referring to the language of the statute itself, Ulimengu makes no real effort to develop this argument, which was raised for the first time in his reply. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to...put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n,* 59 F.3d 284, 293–94 (1st Cir.1995) (citation omitted)) (other citations omitted). Although the Court has an obligation to liberally construe pleadings filed by a person proceeding without counsel, it has no authority to create arguments or claims that the plaintiff has not made. *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("A court cannot create a claim which [a plaintiff] has not spelled out in his pleading."); *Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009) (Sutton, J., dissenting) ("No doubt, we expect less of pro se litigants than we do of counseled litigants - and appropriately so. But those modest expectations are not non-existent. '[P]ro se parties must still brief the issues advanced with some effort at developed

---

(4) A person sentenced upon conviction of a misdemeanor is not eligible for parole and shall, instead, be discharged upon completion of his term of imprisonment, less the credit time he has earned with respect to that term.

(c) A person whose parole is revoked may be reinstated on parole by the parole board any time after the revocation, regardless of whether the offender was sentenced under IC 35-50 or another law. The parole board may adopt, under IC 4-22-2, rules and regulations regarding eligibility for reinstatement.

Ind. Code § 11-13-3-2 (emphasis added).

argumentation.'") (*quoting Coleman v. Shoney's, Inc.*, 79 F. App'x 155, 157 (6th Cir. 2003)). Thus, Ulimengu's failure to develop this argument in any meaningful way is reason enough to deny his § 2241 petition.

More importantly, Ulimengu's argument improperly conflates the concept of being credited for time spent in custody towards the completion of an imposed term of imprisonment with the term "credit time" as used by this statute. Indiana courts distinguish between "two types of credit that must be calculated: '(1) the credit toward the sentence a prisoner receives for time actually served, and (2) the additional credit a prisoner receives for good behavior and educational attainment.'" *Moon v. State*, 110 N.E.3d 1156, 1160 (Ind. Ct. App. 2018) (quoting *Purcell v. State*, 721 N.E.2d 220, 222 (Ind. 1999)). While Ind. Code § 11-13-3-2 refers to the "credit time" earned by various offenders, this term is defined by Ind. Code § 35-50-6-0.5, *see* Ind. Code §§ 11-8-1-1, 11-8-1-6.5, and means "the sum of a person's accrued time, good time credit, and educational credit." Ind. Code § 35-50-6-0.5(3). Thus, in this context:

> Credit time is a statutory reward for good behavior and is earned by felons toward release on parole, not toward reduction of the felon's fixed term of imprisonment or date of discharge from the felon's sentence. *Boyd v. Broglin*, 519 N.E.2d 541, 542 (Ind. 1988). In other words, credit time operates to advance a defendant's release date from prison but does not reduce the parolee's overall length of sentence. *Miller v. Walker*, 655 N.E.2d 47, 48 n.3 (Ind. 1995).

*Garrison v. Sevier*, 165 N.E.3d 996, 1000 (Ind. Ct. App.), *transfer denied,* 171 N.E.3d 611 (Ind. 2021).

Thus, whether or not Ulimengu was eligible to earn "credit time" under Section 11-13-3-2 as a result of his prior sentence of life imprisonment (a question that this Court need not resolve) is completely separate issue from whether Ulimengu earned credit towards the completion of his state sentence for the time that he actually served in custody. And because Ulimengu's time in custody from January 2009 through May 2010 *was* credited against his state sentence, Section

-7-

3585(b) plainly forbids counting it a second time against his federal sentence. *United States v. Wilson*, 503 U.S. 329, 337 (1992) ("... Congress made clear that a defendant could not receive a double credit for his detention time."). *See also Huffman v. Perez*, No. 99-6700, 2000 WL 1478368 (6th Cir. Sept. 27, 2000); *Broadwater v. Sanders*, 59 F. App'x 112, 113-14 (6th Cir. 2003).

Moreover, Indiana authorities retained primary jurisdiction over Ulimengu until Ulimengu was relinquished to federal custody. "As between the state and federal sovereigns, primary jurisdiction over a person is generally determined by which one first obtains custody of, or arrests, the person." *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005). *See also Ponzi v. Fessenden*, 258 U.S. 254, 260-62 (1922). Ulimengu does not dispute that he was first taken into custody by state officials on September 30, 2008 for his parole violation, which was officially revoked on October 17, 2008. Thus, Indiana had primary jurisdiction over Ulimengu.

Primary jurisdiction continues until a sovereign specifically relinquishes it, generally through release on bail, dismissal of charges, parole, or expiration of the sentence. *Cole*, 416 F.3d at 897. While Ulimengu was temporarily transferred into federal custody through a writ of habeas corpus *ad prosequendum*, "[a] federal sentence does not begin to run...when a prisoner in state custody is produced for prosecution in federal court pursuant to a federal writ of habeas corpus *ad prosequendum.*" *United States v. White*, 874 F.3d 490, 507 (6th Cir. 2017) (quoting *United States v. Evans*, 159 F.3d 908, 912 (4th Cir. 1998)). Rather, "[w]hen a state sends a prisoner to federal authorities pursuant to [a writ of habeas corpus *ad prosequendum*], 'the prisoner is merely "on loan" to the federal authorities,' with the State retaining primary jurisdiction over the prisoner." *Id*. (quoting *United States v. Casas*, 425 F.3d 23, 27 (1st Cir. 2005)).

In these circumstances, the federal sentence does not generally begin to run until "the state authorities relinquish the prisoner on satisfaction of the state obligation." *Id*. (*quoting Evans*, 159

F.3d at 912). *See also Jones v. Eichenlaub*, No. 08-CV-13624, 2010 WL 2670920, at *2 (E.D. Mich. 2010)) (*citing Thomas v. Whalen*, 962 F.2d 358, 361 n.3 (4th Cir. 1992)) ("A consecutive [federal] sentence imposed on a defendant already in state custody…cannot commence until the state authorities relinquish the prisoner on satisfaction of the state obligation."). For these reasons, the United States Court of Appeals for the Sixth Circuit has consistently rejected claims by prisoners seeking custody credit for time they were transferred temporarily to federal custody pursuant to a writ of habeas corpus *ad prosequendum* because such prisoners continue to receive credit toward their state sentence. *See, e.g.*, *Bridgeman v. Bureau of Prisons*, 112 F. App'x 411, 413 (6th Cir. 2004); *Broadwater*, 59 F. App'x at 114 ("If Broadwater were credited for [time in federal custody pursuant to a writ of habeas corpus *ad prosequendum*], he would receive improper double credit."); *Huffman v. Perez*, 2000 WL 1478368, *2, 230 F.3d 1358 (6th Cir. Sept. 27, 2000); *Nguyen v. Dep't of Justice*, 1999 WL 96740, *1, 173 F.3d 429 (6th Cir. Feb. 3, 1999).

Because Ulimengu received credit against his state sentence for his time in custody from January 16, 2009 through May 7, 2010, and because the State of Indiana did not act to relinquish its jurisdiction over Ulimengu until October 24, 2019, the date that he was paroled from his Indiana sentence and transferred to exclusive custody of federal officials, the BOP has properly denied Ulimengu's request for additional prior custody credits under § 3585(b).[5]

Accordingly, it is hereby **ORDERED** as follows:

---

[5] Under 18 U.S.C. § 3621(b), the BOP is granted discretionary placement authority to designate the place of a federal prisoner's imprisonment. Included in this authority is discretion to designate a state prison *nunc pro tunc* as the facility for the start of service of a federal sentence, resulting in a concurrent federal sentence. *Barden v. Keohane*, 921 F. 2d 476 (3d Cir. 1990) *See also* BOP Program Statement 5160.05 (implementing the rule set forth in *Barden*). While Ulimengu's reply refers to the availability of *nunc pro tunc* designation, he raises this issue for the first time in his reply and, even then, he makes no effort to develop an argument that such designation is warranted here.

1. Ulimengu's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 [R. 1] is **DENIED**.

2. This action is **DISMISSED** and **STRICKEN** from the Court's docket.

3. Judgment shall be entered contemporaneously with this Memorandum Opinion and Order.

This the 13th day of March, 2023.



Signed By:
William O. Bertelsman  WOB
United States District Judge